UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| SWARNER HILL, et al. | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-03-CO-03434-W |
| BUILDING MATERIALS WHOLESALE, INC., | ] |
| Defendant(s). | ] |

MEMORANDUM OF OPINION

Plaintiffs, Swarner Hill, Gerard Davis, Patrick Pickett, and Derrick Rhynes, are African-American males who claim Defendant, Building Materials Wholesale ("BMW"), Inc., discriminated against them in the terms and conditions of their employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981"). The cause is presently before the Court for consideration of Defendant's motion for summary judgment, filed December 3, 2004. (Doc. 21). The motion has been briefed and is ready for consideration.

I.	Standard of Review.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by

the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

II.   Discussion.

A plaintiff may employ direct, circumstantial, or statistical evidence to prove intentional discrimination.  *Standard v. ABEL Serv., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998).  Plaintiffs have offered no direct or statistical evidence and thus must rely on circumstantial evidence in an effort to prove their case.  Title VII claims based upon circumstantial evidence are reviewed by the Court by applying the three-step burden shifting analysis set out in the United States Supreme Court cases of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The analysis for claims arising under § 1981 parallels the analysis for Title VII. Under this analysis, a plaintiff must first establish a prima facie case of discrimination. *Cooper* v. Southern Co. 390 F.3d 695, 724-25 (11th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 142 (2000)). Once the plaintiff has met the *prima facie* case requirement, the defendant must then "rebut by offering a legitimate, non-discriminatory reason for the allegedly discriminatory act." *Id.* This burden is "exceedingly light . . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Id.* at 725 (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)). Assuming the defendant successfully rebuts the plaintiff's claim, "the presumption of discrimination is eliminated," and the burden returns to the plaintiff to produce evidence sufficient to permit a reasonable factfinder to conclude that the reasons for the adverse employment action as articulated by the employer were a mere pretext for discrimination. *Burdine*, 450 U.S. at 253 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

against the plaintiff remains at all times with the plaintiff.") If the plaintiff fails to produce such evidence or fails to establish a prima facie case of racial discrimination altogether, the employer is entitled to summary judgment on the plaintiff's claim, assuming no other evidence of discrimination exists. *Cooper*, 390 F.3d at 725 (citing *Chapman v. AL Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000)).

    A.    Disparate Pay.

Plaintiffs allege intentional discrimination in compensation because, as Plaintiffs contend, Defendant hires white employees at higher wages than blacks with greater seniority. To prevail on such a claim, Plaintiffs must establish that (1) they belong to a racial minority; (2) they received lower wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) they were qualified to receive the higher wage. *Cooper*, 390 F.3d at 734-735 (citing *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992) (compensation discrimination by gender); *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991) (compensation discrimination by age)). Defendant alleges that Plaintiffs are unable to establish a *prima facie* case of

discrimination for two reasons. First, Defendant asserts that Plaintiffs cannot establish that they are similarly-situated to any of their non-minority co-workers, in this case, former BMW warehouseman Clint Madison. Second, Defendant asserts that Plaintiffs cannot establish a prima facie case because the plaintiffs in fact earned more than the white employee who they contend was earning greater pay.[1]

In order for another employee to be considered a valid comparator, the non-minority and minority employees must be "similarly situated in all respects," *Knight*, 330 F.3d at 1316, including the "skill, effort, and responsibility required in the performance of the job" and the primary tasks performed. *Miranda*, 975 F.2d at 1533. "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted).

Despite Plaintiffs' contention that Mr. Madison is their comparator because both they and Mr. Madison are non-upper level management (Doc.

---

[1] Defendant concedes that plaintiff Rhynes earned less than Mr. Madison. However, as is the case with the remaining plaintiffs, Defendant is due to be granted summary judgment on plaintiff Rhynes' claim because of plaintiff Rhynes' failure to name a proper comparator. Thus, for the purposes of this analysis, the distinction regarding pay is irrelevant.

30), Mr. Madison is not a proper comparator for the purposes of establishing a *prima facie* case of discrimination. Unlike Plaintiffs, Mr. Madison did not regularly perform duties of delivery personnel, including operating heavy machinery, such as boom and flatbed trucks, handling sheetrock both on and off company premises, and delivering materials to various job sites. (Doc. 21, Pl. Rhynes Dep. at 13; Walker Dep. at 23.) Rather, as warehouse manager, Mr. Madison was primarily responsible for receiving and managing inventory, loading delivery trucks, and attending to walk-up customers. (Doc. 21, Exhibit H; Walker Dep. at 23.) The identification of Mr. Madison as a similarly situated employee is further undermined by Plaintiffs themselves, who characterize Mr. Madison's job as requiring less physical exertion and involving more job security than their own (Doc. 21, Pickett Dep. at 34), as well as the difference in Mr. Madison's and the Plaintiffs' effective rate of pay.[2]

Even assuming, however, that Plaintiffs and Mr. Madison are proper comparators, Plaintiffs have not offered "'significant probative' evidence" on the issue [of pretext] to avoid summary judgment." *Mayfield v. Patterson*

---

[2] It is important to note that Plaintiffs were not similarly situated with Madison when they worked as warehouse personnel because Mr. Madison was not yet an employee of the Defendant.

Pump Co., 101 F.3d at 1371, 1376. Specifically, Plaintiffs have not established that the legitimate reason advanced by BMW for the pay disparity is really a pretext for discrimination.

For the foregoing reasons, Plaintiffs have failed to establish a *prima facie* case of discrimination because they have not shown the existence of a proper comparator, and thus, cannot demonstrate that other non-minority similarly-situated employees received higher compensation. Therefore, summary judgment is due to be granted with respect to Plaintiffs claim of discrimination based on disparate pay and the Court need not examine whether Plaintiffs in fact earned lower pay than Mr. Madison.

B.   Disparate Duties.

Plaintiffs contend that Defendant gives white employees less physically demanding job duties than black employees. Specifically, Plaintiffs contend that "minority employees were required to help [Clint Madison] in the warehouse as well as complete their own job." (Doc. 30.)

To establish a claim of discrimination based upon disparate working conditions, Plaintiffs must establish a prima facie case of discrimination under the four-part framework of *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) and *McDonnell Douglas*. Knight, 330 F.3d at

1316; McDonnell *Douglas*, 411 U.S. at 802.  In other words, Plaintiffs must show: (1) that they are members of a protected class; (2) that they were qualified to perform their jobs; (3) that they were subjected to an adverse employment action; and (4) that the employer treated similarly situated employees outside the protected class more favorably.  *Id.*

Plaintiff Davis testified at his deposition that "whenever it rains, [Plaintiffs] have to do [Madison's] job, sweeping up, cleaning up the warehouse, while [Madison] tells [Plaintiffs] what to do." (Doc. 30; Pl. Davis Dep. at 46.)  BMW supervisor Cecil Patterson testified that on certain occasions when delivery is not possible (e.g. adverse weather conditions), delivery personnel have the option of taking the day off and receiving no pay or earning their hourly wage by assisting warehouse personnel.  (Doc. 21; Patterson Dep. at 17.)  Asking employees to perform substitute duties when performance of their own duties is not possible does not amount to a "serious and material change in the terms, conditions, or privileges" of Plaintiffs' employment necessary to establish an adverse employment action. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir. 2001).  Furthermore, Plaintiff has not produced evidence to suggest that this policy applied exclusively to minorities as opposed to all delivery personnel.

For these same reasons, Plaintiffs have not provided the Court with a valid comparator for the purposes of establishing their *prima facie* case of discrimination. Under the *McDonnell Douglas* framework, a plaintiff must show that the employer treated similarly situated employees outside of the protected class more favorably. *See Knight*, 330 F.3d at 1316. Since BMW gave its delivery personnel the same option - work in the warehouse or go home - Plaintiffs cannot argue that other employees were treated more favorably. Like their coworkers, Plaintiffs were provided an opportunity to work in the warehouse to earn their hourly rate on days when their delivery duties could not be performed. Because Plaintiff cannot establish either a *prima facie* case of discrimination or pretext, Defendant is entitled to summary judgment on Plaintiffs' claims relating to their working conditions.

C.   Hostile Work Environment.

With regard to Plaintiff Hill's allegation that Defendant allowed an employee to bring a noose on the job, Defendant contends that the statute of limitations for bringing this claim has expired; therefore, the claim should be dismissed as untimely.

"Before a potential plaintiff may sue for discrimination under Title VII, he must first exhaust his administrative remedies." *Wilkerson v. Grinnell*

*Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). "The first step down this path is filing a timely charge of discrimination with the [Equal Employment Opportunity Commission] EEOC." *Id.* (citing 42 U.S.C. § 2000e-5(b) (1994); *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000). Only those practices complained of in a timely-filed charge to the EEOC can form the basis for liability under Title VII. *See e.g., City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002).

For claims arising in Alabama and other non-deferral states,[3] the claim must be filed within 180 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1). "Discrete discriminatory acts [such as termination, failure to promote, denial of transfer, or refusal to hire] are not actionable [if not filed within the 180-day statutorily prescribed period], even if related to acts alleged in timely filed charges. "A hostile work environment claim, however, should be reviewed in its entirety, so long as one of the events comprising it falls within the statute of limitations." *Shields v. Fort James Corp.*, 305 F.3d 1280, 1281 (11th Cir. 2002) (quoting *Nat'l R.R. Passenger Corp. v. Morgan* 536 U.S. 101, 113 (11th Cir. 2002)).

---

[3] Non-deferral states are those states without state law banning race discrimination in employment and without state entity authorized to grant relief for victims of such discrimination.

Here, Plaintiff Hill filed a charge of discrimination with the EEOC on January 3, 2003, alleging, among other things, a hostile work environment arising out of a 1998 incident in which he "witnessed a white employee bring a hanging noose on the job." (Doc. 21, Walker Dep. at 20; Doc. 12, Exhibit A.) The complaint, however, asserts no other incidents which contributed to the alleged hostile work environment. As a result, for statute of limitations purposes, Hill's hostile work environment claim under Title VII accrued no later than the date of the alleged noose incident. Thus, under the 180-day limitations period, Plaintiff Hill's complaint to the EEOC should have been filed within 180 days of that date. Because Plaintiff Hill did not file his EEOC claim until 2003, five years later, his hostile work environment claim cannot form the basis for liability in the instant case.

III. Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be granted in all respects. A separate order in conformity with this opinion will be entered.

Done this <u>23rd</u> day of <u>September 2005</u>.

                               _____
                                         L. SCOTT COOGLER
                              UNITED STATES DISTRICT JUDGE
                                                    124153